**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JONATHAN AZURIN, Individually and for Others Similarly Situated<br><br>v.<br><br>BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC. and FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA | **Case No. _____**<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

**ORIGINAL CLASS ACTION COMPLAINT**

SUMMARY

1.      Jonathan Azurin (Azurin) brings this class action to recover unpaid wages and other damages from Bio-Medical Applications of California, Inc. (BMA) and Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America (Fresenius) (together, Defendants).

2.      Fresenius and BMA employed Azurin as a Registered Nurse (RN) in and around Bakersfield and West Covina, California.

3.      Like the Putative Class Members (as defined below), Azurin regularly worked more than 40 hours in a week.

4.      But Defendants did not pay Azurin and the Putative Class Members for all the hours they worked.

5.      Instead, Defendants automatically deducted one hour a day from these employees' work time for so-called "meal breaks."

6.      Azurin and the Putative Class Members were thus not paid for that time.

7.      But Defendants failed to authorize, permit, and/or make available *bona fide* meal breaks to Azurin and the Putative Class Members.

8.      And Azurin and the Putative Class Members did not actually receive *bona fide* meal breaks.

9.      Instead, Defendants required Azurin and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subjected them to work interruptions during their unpaid "meal breaks."

10.     Defendants' failure to provide Azurin and the Putative Class Members with *bona fide* meal breaks violates the meal period provisions of the California Labor Code and applicable Industrial Welfare Commission (IWC) Wage Orders. *See* CAL. LAB. CODE §§ 226.7 and 512; IWC Wage Order No. 5.

11.     Despite depriving Azurin and the Putative Class Members of their required meal periods, Defendants failed to pay these employees the required one hour of premium pay (at their regular rates of pay) for each day they were denied an off-duty meal period in violation of California law. *See* CAL. LAB. CODE § 226.7(c); IWC Wage Order No. 5.

12.     Further, Defendants' automatic meal break deduction policy violates various provisions of the California Labor Code and applicable IWC Wage Orders by depriving Azurin and the Putative Class Members of earned wages, including overtime wages, for all hours worked, including those worked during their unpaid "meal breaks." *See* CAL. LAB. CODE §§ 204 and 510; IWC Wage Order No. 5-2001(3)(A)(1).

13.     Likewise, Defendants' automatic meal break deduction policy violates the accurate wage statement provisions of the California Labor Code and applicable IWC Wage Orders by depriving Azurin and the Putative Class Members of wage statements that accurately reflect (1) all hours actually worked, (2) all wages actually earned, and (3) premium pay for missed meal periods. *See* CAL. LAB. CODE § 226; IWC Wage Order No. 5-2001(7).

14.     Further, in addition to excluding time Azurin and the Putative Class Members worked during their unpaid "meal breaks," Defendants also paid Azurin and the Putative Class Members different hourly rates depending on what type of shifts they worked (or "shift differentials").

15.     But Defendants failed to include these shift differentials in calculating Azurin's and the Putative Class Members' regular rates of pay for overtime purposes.

16.     Defendants' shift differential pay scheme violates the overtime provisions of the California Labor Code and applicable IWC Wage Orders by depriving Azurin and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received. *See* CAL. LAB. CODE § 510; IWC Wage Order No. 5-2001(3)(A)(1).

### JURISDICTION & VENUE

17.     This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

18.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Azurin's Putative Class and Fresenius and/or BMA are citizens of different states; and (c) Azurin's Putative Class exceeds 100 members.

19.     This Court has general personal jurisdiction over Fresenius and BMA because Defendants maintain their shared principal place of business and corporate headquarters in Waltham, Massachusetts and, therefore, are "at home" in the State of Massachusetts.

20.     Venue is proper because Defendants maintain their shared principal place of business and corporate headquarters in Waltham, Massachusetts, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

21.     Defendants employed Azurin as an RN at various Fresenius dialysis clinics in and around Bakersfield and West Covina, California from approximately August 2009 until November 2021.

22.     Specifically, throughout his employment, Fresenius required Azurin to work and be paid through BMA.

23.     Throughout his employment, Defendants classified Azurin as non-exempt and paid him on an hourly basis.

24.     Throughout his employment, Defendants subjected Azurin to their common practice of automatically deducting one hour per shift from his recorded work time for so-called "meal breaks."

25.     But throughout his employment, Defendants failed to provide Azurin with *bona fide* meal breaks, and Azurin did not actually receive *bona fide* meal breaks.

26.     And throughout his employment, Defendants failed to pay Azurin the mandatory one hour of premium pay (at his regular rates of pay) for each day Defendants denied him an off-duty meal period.

27.     Further, throughout his employment, Defendants paid Azurin shift differentials that Defendants failed to include in calculating his regular rate of pay for overtime purposes.

28.     Finally, throughout his employment, Defendants failed to provide Azurin with accurate, itemized wage statements.

29.     Pursuant to FED. R. CIV. P. 23, Azurin brings this class action on behalf of himself and other similarly situated hourly, non-exempt patient care employees who worked for, or on behalf of, Fresenius through BMA in California who (1) were subject to Defendants' automatic meal break deduction policy, and/or (2) were paid under Defendants' shift differential pay scheme.

30.     Defendants automatically deduct one hour per shift from these employees' recorded hours worked (and wages) for so-called "meal breaks."

31.     But Defendants fail to provide, and these employees do not actually receive *bona fide* meal breaks.

32.     Instead, Defendants require these employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

33.     Thus, Defendants uniformly fail to provide these employees with *bona fide* meal periods in violation of the California Labor Code and applicable IWC Wage Orders.

34.     And Defendants fail to pay these employees the mandatory one hour of premium pay (at their regular rates of pay) for each day Defendants denied them an off-duty meal period in violation of the California Labor Code and applicable IWC Wage Orders.

35.     Further, Defendants pay these employees shift differentials that Defendants fail to include in calculating their regular rates of pay for overtime purposes in violation of the California Labor Code and applicable IWC Wage Orders.

36.     Thus, Defendants uniformly deprive these employees of earned wages, including overtime wages at the proper premium rate (based on all renumeration received), for all hours worked, including those worked in excess of 40 hours in a workweek, in violation of the California Labor Code and applicable IWC Wage Orders.

37.     Finally, as a result of Defendants illegal employment policies, Defendants uniformly fail to provide these employees with accurate, itemized wages statements.

38.     The Putative Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Fresenius through BMA in California who received (1) a meal period deduction and/or (2) shift differentials at any time during the past 4 years ("Putative Class Members").**

39.     Fresenius is a New York corporation that maintains its headquarters in Waltham, Massachusetts.

40.     Fresenius may be served with process by serving its registered agent: **CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110**.

41.     BMA is ultimately a wholly owned subsidiary of Fresenius.

42.     BMA is a Delaware corporation that maintains its headquarters in Waltham, Massachusetts.

43.     BMA may be served with process by serving its registered agent: **CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110**.

FACTS

44.     Fresenius bills itself as "the world's leading provider of products and services for individuals with renal diseases."[1]

45.     "Through [its] network of more than 4,100 dialysis clinics, [Fresenius] provide[s] dialysis treatments to approximately 345,000 patients worldwide[,]"[2] including in California.

46.     Throughout the relevant period, BMA has ultimately been Fresenius's wholly owned subsidiary.

47.     To complete their shared business objective of providing dialysis services to patients across the United States (including in California), Fresenius hires patient care workers through BMA (including Azurin and the Putative Class Members) to work in the dialysis clinics that Fresenius owns and/or operates in California.

---

[1] https://www.freseniusmedicalcare.com/en/about-us/company-profile (last visited July 11, 2023).
[2] *Id.*

48.    Fresenius uniformly misclassifies the patient care employees who work in its healthcare facilities and clinics through BMA (including Azurin and the Putative Class Members) as independent contractors.

49.    But Fresenius does not hire these patient care employees on a project-by-project basis.

50.    Rather, Fresenius hires and treats Azurin and the Putative Class Members just like regular employees.

51.    Indeed, despite uniformly misclassifying Azurin and the Putative Class Members as independent contractors, Fresenius, jointly with BMA, controls all meaningful aspects of these patient care employees' jobs.

52.    Fresenius wholly controls BMA and the patient care employees who work at Fresenius's dialysis clinics in California, including Azurin and the Putative Class Members.

53.    In fact, Fresenius requires Azurin and the Putative Class Members to work and be paid through BMA as a condition of their employment with Fresenius.

54.    Further, Fresenius and BMA have shared or common ownership and/or management.

55.    Fresenius and BMA have shared or common ownership of the facilities and clinics at which Azurin and the Putative Class Members work.

56.    Fresenius and BMA have a shared a corporate headquarters in Waltham, Massachusetts.

57.    Fresenius and BMA have a shared and/or centralized human resource department.

58.    Fresenius and BMA control Azurin's and the Putative Class Members' rates and methods of pay.

59.    Fresenius and BMA control Azurin's and the Putative Class Members' schedules and assignments.

60.    Fresenius and BMA control Azurin's and the Putative Class Members' patient care work.

61.    Fresenius and BMA require Azurin and the Putative Class Members to follow Fresenius's and BMA's policies, procedures, and protocols.

62.    Azurin's and the Putative Class Members' patient care and dialysis work must strictly adhere to the uniform quality standards put in place by Fresenius and BMA.

63.    Indeed, upon hiring, Fresenius and BMA require Azurin and the Putative Class Members to complete trainings on Fresenius's specific policies, procedures, and protocols to ensure their work conforms to the same.

64.    Azurin and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

65.    Indeed, the daily and weekly activities of Azurin and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Fresenius and BMA.

66.    Virtually every job function is predetermined by Fresenius and BMA, including the tools and equipment used, the schedule of work, and related work duties.

67.    Fresenius and BMA prohibit Azurin and the Putative Class Members from varying their job duties outside of the predetermined parameters, and Defendants require these patient care employees to follow Fresenius's and BMA's uniform policies, procedures, and directives.

68.    Fresenius and BMA prohibit Azurin and Putative Class Members from straying from Defendants' uniform procedures, plans, protocols, and specifications.

69.     Without the patient care and dialysis work Azurin and the Putative Class Members perform, Fresenius and BMA would not be able to complete their common business objective of providing dialysis services to patients across the United States (including in California).

70.     Thus, Azurin's and the Putative Class Members' work is integral to, and simultaneously benefits, Defendants' shared business.

71.     Azurin and the Putative Class Members rely on Defendants for work and compensation.

72.     Azurin and the Putative Class Members do not substantially invest in the tools required to complete the overall job to which they are assigned.

73.     Rather, Fresenius and/or BMA incur the large-scale business and operating expenses like marketing, payroll, clinics, and dialysis/medical equipment, tools, and materials.

74.     Fresenius and BMA maintain control, oversight, and direction of Azurin and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

75.     Fresenius and BMA possess the authority to hire, fire, and discipline Azurin and the Putative Class Members.

76.     Fresenius and BMA supervise and control Azurin's and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

77.     Fresenius and BMA maintain employment records for Azurin and the Putative Class Members.

78.     In sum, at all relevant times, Fresenius and BMA employed, jointly or otherwise Azurin and the Putative Class Members.

79.     Defendants uniformly classify the patient care employees who work in Fresenius's California dialysis clinics, including Azurin and the Putative Class Members, as non-exempt and pay them on an hourly basis.

80.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

81.     For example, Defendants employed Azurin as an RN at various Fresenius dialysis clinics in and around Bakersfield and West Covina, California from approximately August 2009 until November 2021.

82.     Specifically, throughout his employment, Fresenius required Azurin to work and be paid through BMA.

83.     Throughout his employment, Defendants classified Azurin as non-exempt and paid him on an hourly basis.

84.     Throughout his employment, Defendants subjected Azurin to their common practice of automatically deducting one hour per shift from his recorded work time for so-called "meal breaks."

85.     But throughout his employment, Defendants failed to provide Azurin with *bona fide* meal breaks, and Azurin did not actually receive *bona fide* meal breaks.

86.     And throughout his employment, Defendants failed to pay Azurin the mandatory one hour of premium pay (at his regular rates of pay) for each day Defendants denied him an off-duty meal period.

87.     Further, throughout his employment, Defendants paid Azurin shift differentials that Defendants failed to include in calculating his regular rate of pay for overtime purposes.

88.     Finally, throughout his employment, Defendants failed to provide Azurin with accurate, itemized wage statements.

89.     As an RN, Azurin's primary responsibilities included providing direct patient care to dialysis patients, overseeing dialysis treatments to patients, prepping patients for dialysis, checking vitals, charting patients' treatments, responding to any emergencies, and generally assisting with dialysis and other healthcare treatments.

90.     Azurin and the Putative Class Members perform their jobs under Defendants' supervision and use materials, equipment, and technology approved and supplied by Defendants.

91.     Defendants require Azurin and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

92.     At the end of each pay period, Azurin and the Putative Class Members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

93.     Defendants require Azurin and the Putative Class Members to record their hours worked using Defendants' timeclock system.

94.     Further, Defendants subject Azurin and the Putative Class Members to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

95.     Specifically, Defendants automatically deduct one hour a day from Azurin's and the Putative Class Members' work time and wages for "meal breaks."

96.     Defendants automatically deduct this time regardless of whether Azurin and the Putative Class Members actually receive full, uninterrupted, 30-minute meal period(s).

97.     Indeed, Defendants simply assume Azurin and the Putative Class Members receive *bona fide* meal breaks each shift they work.

98.     But Defendants fail to provide Azurin and the Putative Class Members with *bona fide* meal periods.

99.     And Azurin and the Putative Class Members do not actually receive *bona fide* meal breaks.

100.     Instead, Defendants require Azurin and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject these employees to work interruptions during their unpaid meal periods.

101.     Indeed, because of these constant work interruptions, Azurin and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

102.     Rather, during their unpaid "meal breaks," Azurin and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

103.     Thus, Azurin and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Defendants—not these employees'—shared predominant benefit.

104.     This unpaid time is compensable under the California Labor Code and applicable IWC Wage Order(s) because Defendants knew, or should have known, that (1) Azurin and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Defendants' premises, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Defendants' shared predominant benefit.

105.    The unpaid time is also compensable under the California Labor Code and applicable IWC Wage Order(s) because Defendants agreed to pay Azurin and the Putative Class Members hourly rates of pay for all time they worked, and Defendants failed to pay these employees earned wages for their on-duty "meal breaks."

106.    Defendants fail to exercise their shared duty as Azurin's and the Putative Class Members' employer(s) to ensure these employees are not performing work that Defendants do not want performed during their unpaid "meal breaks."

107.    And Defendants know Azurin and the Putative Class Members routinely work "off the clock" during their unpaid meal breaks because Defendants expect and require these employees to do so.

108.    In fact, Azurin and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

109.    Despite accepting the benefits, Defendants do not pay Azurin and the Putative Class Members for the compensable work they perform during their "meal breaks."

110.    Thus, under Defendants' uniform automatic meal break deduction policy, Azurin and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked over 40 hours in violation of the California Labor Code and applicable IWC Wage Order(s).

111.    Likewise, under Defendants' uniform automatic meal break deduction policy, Azurin and the Putative Class Members are deprived earned wages (at their agreed hourly rates of pay) for those on-duty "meal breaks" in workweeks in which they worked under 40 hours in violation of the California Labor Code and applicable IWC Wage Order(s).

112.    Defendants failure to provide Azurin and the Putative Class Members with *bona fide* meal breaks also violates the meal break provisions of the California Labor Code and applicable IWC Wage Order(s).

113.    Despite knowing they fail to provide these patient care employees with compliant meal and rest periods, Defendants also fail to pay Azurin and the Putative Class Members the mandatory one hour of premium pay (at their regular rates) for each day they are denied compliant meal and/or rest periods in violation of California law.

114.    In addition to excluding time from these employees' wages for "meal breaks," Defendants also pay Azurin and the Putative Class Members shift differentials depending on what type of shifts they work.

115.    But Defendants fail to include these shift differentials in calculating Azurin's and the Putative Class Members' regular rates of pay for overtime purposes.

116.    Defendants' shift differential pay scheme violates the California Labor Code and applicable IWC Wage Order(s) by depriving Azurin and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

117.    Azurin worked more than 40 hours in at least one workweek during the 4 years before this Complaint was filed.

118.    For example, during each workweek in August 2021, Azurin worked more than 40 hours (not including the time he spent working during his unpaid "meal breaks").

119.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 4 years before this Complaint was filed.

120.    Indeed, throughout the relevant period, Azurin and the Putative Class Members typically worked 12- to 16-hour shifts for at least 4 days a week.

121.    And Azurin and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their job duties and patient care responsibilities.

122.    As a result, Azurin and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

123.    When Azurin and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them overtime wages at rates not less than 1.5 times their regular rates for all overtime hours worked because Defendants fail to include: (1) time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek and/or (2) these employees' shift differentials in calculating their regular rates of pay for overtime purposes in violation of the California Labor Code and applicable IWC Wage Order(s).

124.    Likewise, when Azurin and the Putative Class Members work fewer than 40 hours in workweek, Defendants do not pay them all their earned wages (at their agreed hourly rates) for all hours worked because Defendants fail to include time these employees worked "off the clock" during their meal breaks in their total number of hours worked in a given workweek in violation of the California Labor Code and applicable IWC Wage Order(s).

125.    Further, Defendants' common course of wage-and-hour abuses includes routinely failing to maintain true and accurate records for Azurin and the Putative Class Members.

126.    For example, due to Defendants' illegal auto-deduction policy, Defendants fail to record the hours that Azurin and the Putative Class Members actually worked during their shifts, as well as record these employees' premium pay for denied meal periods.

127.    Thus, Defendants uniformly fail to provide Azurin and the Putative Class Members with accurate, itemized wage statements that accurately reflect (1) their hours actually worked, (2) their wages actually earned, and (3) their meal period premium pay in violation of California law.

128.    Finally, due to Defendants' illegal employment policies, Defendants also fail to provide Azurin and the Putative Class Members who have left their employment with full payment of all wages owed at the end of their employment in violation of California law.

129.    As these patient care employees are owed unpaid overtime wages and premium wages when their employment ends, and these amounts remain unpaid under Defendants' uniform policies and practices, Defendants uniformly fail to pay all wages due upon termination in violation of California law.

130.    As a result, Defendants are subject to waiting time penalties.

131.    Defendants' violations of California wage laws were willful, carried out in bad faith, and caused significant damage to their patient care employees.

## CLASS ACTION ALLEGATIONS

132.    Azurin incorporates all other paragraphs by reference.

133.    Azurin brings his California labor law claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

134.    The Putative Class Members were victimized by Defendants' auto-deduction policy and/or bonus pay scheme, which are in willful violation of California labor laws.

135.    Other Putative Class Members worked with Azurin and indicated they were paid in the same manner, performed similar work, and were subject to Defendants' same meal break deduction policy and/or shift differential pay scheme.

136.    Based on his experience with Defendants, Azurin is aware Defendants' illegal practices were imposed on the Putative Class Members.

137.    The Putative Class Members are similarly situated in all relevant respects.

138.    Rather, the Putative Class is held together by (1) Defendants' uniform meal break deduction policy and/or (2) Defendants' uniform shift differential pay scheme, both of which

systematically deprived Azurin and the Putative Class Members of wages, including overtime pay at the proper premium rate, for all hours worked, including those hours worked over 40 in a workweek.

139.    Defendants' failure to pay wages and overtime wages as required by California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

140.    Defendants' records reflect the number of hours worked each week by the Putative Class Members.

141.    Defendants' records show that they automatically deducted 30 minutes/shift from the Putative Class Members' recorded work time for meal breaks.

142.    Defendants' records also show that they paid the Putative Class Members shift differentials.

143.    Defendants' records also show that they failed to pay the Putative Class Members premium pay for their denied meal periods.

144.    The back wages owed to Azurin and the Putative Class Members can be calculated using the same formula applied to the same records.

145.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Fresenius' records, and there is no detraction from the common nucleus of liability facts.

146.    Therefore, the issue of damages does not preclude class treatment.

147.    Azurin's experiences are therefore typical of the experiences of the Putative Class Members.

148.    Azurin has no interest contrary to, or in conflict with, the Putative Class Members.

149.    Like each Putative Class Member, Azurin has an interest in obtaining the unpaid wages owed to them under California law.

150.    A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

151.    Absent this class action, many Putative Class Members likely will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating California law.

152.    Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

153.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

154.    The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

155.    Among the common questions of law and fact are:

a.    Whether Defendants employed, jointly or otherwise, Azurin and the Putative Class Members;

b.    Whether Defendants engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of California law;

c.    Whether Defendants knew, or had reason to know, Azurin and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of California law;

d.    Whether Defendants' automatic meal break deduction policy deprived Azurin and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of California law;

e. Whether Defendants failed to pay Azurin and the Putative Class Members earned wages (at their agreed hourly rates) for all hours worked, including hours worked during missed and interrupted meal breaks, in violation of California law;

f. Whether Defendants failed to pay Azurin and the Putative Class Members overtime wages for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of California law;

g. Whether Defendants failed to authorize, permit, and/or make available *bona fide* meal breaks to Azurin and the Putative Class Members in violation of California law;

h. Whether Defendants failed to pay Azurin and the Putative Class Members the mandatory one hour of premium pay (at their regular hourly rates) for each day they were denied an off-duty meal break in violation of California law;

i. Whether Defendants failed to include Azurin's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes in violation of California law;

j. Whether Defendants failed to provide Azurin and the Putative Class Members accurate, itemized wage statements in violation of California law;

k. Whether Defendants failed to pay Azurin and the Putative Class Members who left their employment all earned wages upon separation in violation of California law;

l.      Whether Defendants' violations of California labor laws resulted from a continuing course of conduct;

m.      Whether Defendants' decision to not pay Azurin's and the Putative Class Members' all their earned wages (at their agreed rates) for all hours worked was made in good faith;

n.      Whether Defendants' decision not to pay Azurin and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith;

o.      Whether Defendants' decision not to provide Azurin and the Putative Class Members with accurate, itemized wage statements was made in good faith;

p.      Whether Defendants' decision not to pay Azurin and the Putative Class Members who have left their employment all earned wages upon separation was made in good faith; and

q.      Whether Defendants' violations of California labor laws were willful.

156.    Azurin knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

157.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to pay Azurin and the Putative Class Members all their earned wages (at their agreed rates) for all hours worked.

158.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to pay Azurin and the Putative Class Members overtime wages at the proper premium rate for all overtime hours worked.

159.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to provide *bona fide* meal periods to Azurin and the Putative Class Members.

160.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to pay Azurin and the Putative Class Members the mandatory one hour of premium pay (at their regular hourly rates) for each day these employees were denied an off-duty meal period.

161.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to provide Azurin and the Putative Class Members with accurate, itemized wage statements.

162.    Defendants are jointly liable under the California Labor Code and applicable IWC Wage Order(s) for failing to pay Azurin and the Putative Class Members who have left their employment with all earned wages upon separation.

163.    As part of their shared regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating California labor laws with respect to Azurin and the Putative Class Members.

### DEFENDANTS' VIOLATIONS OF CALIFORNIA LAW WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF CALIFORNIA LAW

164.    Azurin incorporates all other paragraphs by reference.

165.    Defendants knew they were subject to the California Labor Code and applicable IWC Wage Order(s), including their respective overtime provisions.

166.    Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to pay employees, including Azurin and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay (based on all renumeration received) for all hours worked after 8 in a workday and 40 in a workweek.

167.    Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to pay employees, including Azurin and the Putative Class Members, double time

wages at rates not less than 2 times these employees' regular rates of pay (based on all renumeration received) for all hours worked over 12 in a workday and 8 on the seventh consecutive workday.

168.    Defendants knew they employed Azurin and the Putative Class Members.

169.    Defendants knew Azurin and the Putative Class Members were non-exempt employees entitled to overtime.

170.    Defendants knew Azurin and the Putative Class Members were paid on an hourly basis.

171.    Defendants knew Azurin and the Putative Class Members worked more than 40 hours in at least one workweek during the relevant statutory period because Defendants required these employees to record their hours worked using Defendants' timeclock system.

172.    Defendants knew they paid Azurin and the Putative Class Members shift differentials.

173.    Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to include Azurin's and the Putative Class Members' shift differentials in calculating their regular rates of pay for overtime purposes.

174.    Defendants knew they excluded Azurin's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes.

175.    Defendants knew they were required to include Azurin's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes.

176.    Nonetheless, Defendants failed to include Azurin's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes.

177.    Thus, Defendants knew, should have known, or showed reckless disregard for the fact they failed to pay Azurin and the Putative Class Members overtime (and double time) wages at

the proper premium rate—based on all renumeration received—in violation of the California Labor Code and applicable IWC Wage Order(s).

178. Defendants' failure to pay Azurin and the Putative Class Members overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate made in good faith.

179. Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to pay employees, including Azurin and the Putative Class Members, all their earned wages (at the rates agreed to by the parties) for all hours worked.

180. Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to pay Azurin and the Putative Class Members for all hours these employees performed compensable work.

181. Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to authorize, permit and/or make available *bona fide* meal periods to Azurin and the Putative Class Members, during which these employees are totally relieved of work duties.

182. Defendants knew that, as Azurin's and the Putative Class Members' employer(s), they had a duty to ensure these employees were not performing work that Defendants did not want performed during their unpaid "meal breaks."

183. Defendants knew they failed to provide Azurin and the Putative Class Members with *bona fide* meal breaks.

184. Defendants knew Azurin and the Putative Class Members did not actually receive *bona fide* meal breaks.

185. Defendants knew Azurin and the Putative Class Members regularly worked during their unpaid meal breaks because Defendants expected and required them to do so.

186.    Defendants knew Azurin and the Putative Class Members regularly spent their meal breaks substantially performing their normal patient care job duties for Defendants' shared predominant benefit.

187.    Indeed, Azurin and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

188.    Thus, Defendants knew, should have known, or showed reckless disregard for the fact they failed to authorize, permit and/or make available *bona fide* meal periods to Azurin and the Putative Class Members in violation of the California Labor Code and applicable IWC Wage Order(s).

189.    Likewise, Defendants knew, should have known, or showed reckless disregard for the fact Azurin and the Putative Class Members performed compensable work during their unpaid meal breaks.

190.    Nonetheless, Defendants automatically deducted 30 minutes/shift from Azurin's and the Putative Class Members' recorded work time for "meal breaks," regardless of whether they actually received *bona fide* meal breaks.

191.    Thus, Defendants knew, should have known, or showed reckless disregard for the fact they did not pay Azurin and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid meal breaks.

192.    In other words, Defendants knew, should have known, or showed reckless disregard for the fact that they failed to pay Azurin and the Putative Class Members overtime wages for all overtime hours worked, including hours worked during their unpaid meal breaks, in violation of the California Labor Code and applicable IWC Wage Order(s).

193. Likewise, Defendants knew, should have known, or showed reckless disregard for the fact that they failed to pay Azurin and the Putative Class Members all their earned wages (at the rates agreed to by the parties) for all hours worked, including hours worked during their unpaid meal breaks, in violation of the California Labor Code and applicable IWC Wage Order(s).

194. Defendants' failure to pay Azurin and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

195. Likewise, Defendants' failure to pay Azurin and the Putative Class Members all their earned wages (at their agreed rates of pay) for all hours worked was neither reasonable, nor was Defendants' decision to not pay these employees all their earned wages (at their agreed rates of pay) for all hours worked made in good faith.

196. Further, Defendants knew the California Labor Code and applicable IWC Wage Order(s) required them to pay employees, including Azurin and the Putative Class Members, one hour of premium pay (at their regular hourly rates) for each day these employees are denied an off-duty meal period.

197. As explained *supra*, Defendants knew Azurin and the Putative Class Members did not actually receive *bona fide* meal break during which they were relieved of all duties.

198. Nonetheless, Defendants failed to pay Azurin and the Putative Class Members one hour of premium pay (at their regular hourly rates) for each day these employees are denied an off-duty meal period.

199. Thus, Defendants knew, should have known, or showed reckless disregard for the fact they failed to pay Azurin and the Putative Class Members one hour of premium pay (at their regular hourly rates) for each day these employees are denied an off-duty meal period in violation of the California Labor Code and applicable IWC Wage Order(s).

200.    Defendants knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Azurin and the Putative Class Members of (a) wages, (b) overtime wages, (c) *bona fide* meal periods, (d) premium pay for denied meal periods, and (e) accurate wage statements in violation of the California Labor Code and applicable IWC Wage Order(s).

### COUNT I

### FAILURE TO PAY OVERTIME & DOUBLE TIME WAGES
### PURSUANT TO CAL. LAB. CODE § 510

201.    Azurin incorporates all other paragraphs by reference.

202.    Azurin brings his overtime claim under the California Labor Code and applicable IWC Wage Order(s) as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

203.    At all relevant times, Fresenius was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

204.    At all relevant times, BMA was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

205.    At all relevant times, Defendants employed Azurin and the Putative Class Members as covered "employees" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

206.    At all relevant times, Azurin and the Putative Class Members were entitled to overtime pay under the California Labor Code and applicable IWC Wage Order(s).

207.    Section 510(a) of the California Labor Code provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular

rate of pay for an employee.

208.    IWC Wage Order 5-2001(3)(A)(1), & (3) states that employees:

> . . . shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek …

209.    Section 1194(a) of the California Labor Code further provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

210.    Section 1198 of the California Labor Code makes it unlawful for employers, like Defendants, to employ employees, including Azurin and the Putative Class Members, under conditions that violate any applicable IWC Wage Order(s).

211.    Despite regularly working over 8 hours a day and/or 40 hours in a workweek as part of their normal and regular schedules, Azurin and the Putative Class Members did not receive overtime wages at rates not less than 1.5 times their regular rates of pay for all overtime hours worked, including those hours worked during their unpaid "meal breaks."

212.    Despite occasionally working over 12 hours a day, Azurin and the Putative Class Members did not receive double time wages at rates not less than 2 times their regular rates of for all double time hours worked, including those hours worked during their unpaid "meal breaks."

213.    Defendants violates, and are violating, the overtime (and double time) provisions of the California Labor Code and applicable IWC Wage Order(s) by failing to pay Azurin and the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after 40 in a workweek, including hours worked during these employees' unpaid "meal breaks."

214.    Defendants' unlawful conduct harmed Azurin and the Putative Class Members by depriving them of the overtime and double wages they are owed.

215.    Defendants' pattern, practice, and uniform administration of corporate policy and practices regarding illegal employee compensation is unlawful and entitles Azurin and the Putative Class Members to recover the unpaid balance of the full amount of overtime and double time wages owed, plus an equal amount as liquidated damages, as well as interest at the highest applicable rates, and attorneys' fees and costs.

## COUNT II

### FAILURE TO PAY EARNED WAGES FOR ALL HOURS WORKED
### PURSUANT TO CAL. LAB. CODE § 204

216.    Azurin incorporates all other paragraphs by reference.

217.    Azurin brings his "straight time" claim under the California Labor Code and applicable IWC Order(s) as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

218.    At all relevant times, Fresenius was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

219.    At all relevant times, BMA was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

220.    At all relevant times, Defendants employed Azurin and the Putative Class Members as covered "employees" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

221.    Section 204 of the California Labor Code provides that "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

222.    Section 200(a) of the California Labor Code defines "wages" as "all amounts for labor performed by employees …, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

223.    IWC Wage Order 5-2001(2)(G) defines "hours worked" as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

224.    During the course of their employment, Defendants agreed to pay Azurin and each Putative Class Member an hourly rate for all hours worked up to 40 in a workweek.

225.    Azurin and each Putative Class Member accepted Defendants' offer.

226.    But during the course of their employment, Defendants failed to pay Azurin and the Putative Class Members all their earned wages (at the rates Defendants agreed to pay them) for all hours worked because Defendants automatically deducted one hour/shift from these employees' recorded hours worked for so-called "meal breaks" that were not *bona fide*.

227.    Defendants violated, and are violating, Section 204 of the California Labor Code by knowingly and willfully failing to pay Azurin and the Putative Class Members all their earned wages (at their agreed hourly rates) for all hours worked, including hours these employees worked during their unpaid "meal breaks."

228.    Defendants' unlawful conduct harmed Azurin and the Putative Class Members by depriving them of the earned wages they are owed.

229.    Defendants' decision to willfully withhold earned wages from Azurin and the Putative Class Members was neither reasonable, nor was Defendants' decision to willfully withhold wages earned from Azurin and the Putative Class Members made in good faith.

230.    Accordingly, Azurin and the Putative Class Members are entitled to recover their unpaid "straight time" compensation (at their agreed hourly rates), plus treble damages, as well as interest at the highest applicable rates, and attorneys' fees and costs.

<u>**COUNT III**</u>

**FAILURE TO AUTHORIZE, PERMIT, AND/OR MAKE AVAILABLE *BONA FIDE* MEAL PERIODS PURSUANT TO CAL. LAB. CODE §§ 226.7 AND 512**

231.    Azurin incorporates all other paragraphs by reference.

232.    Azurin brings his meal period claim under the California Labor Code and applicable IWC Order(s) as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

233.    At all relevant times, Fresenius was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

234.    At all relevant times, BMA was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

235.    At all relevant times, Defendants employed Azurin and the Putative Class Members as covered "employees" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

236.    Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Defendants, to provide employees, including Azurin and the Putative Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

237.    Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers who fail to provide an employee with a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal period was not authorized or permitted.

238.    Unless employees are relieved of all duties during their 30-minute meal period(s), the employees are considered "on duty" and the meal period must be counted as time worked under the applicable IWC Wage Order(s).

239.    Throughout the relevant period, Defendants expected and required Azurin and the Putative Class Members to remain "on duty" and perform compensable work during their unpaid meal breaks.

240.    Because Azurin and the Putative Class Members were not relieved of all duties during their meal period(s) but instead were subject to constant work interruptions, Defendants violated, and continue to violate, the California Labor Code and applicable IWC Wage Order(s) when they automatically deduct one hour/shift from these employees' recorded work time and wages when they work during meal period(s) that were not *bona fide*, continuous, and uninterrupted.

241.    Further, throughout the relevant period, Defendants violated, and continue to violate, the California Labor Code and applicable IWC Wage Order(s) by failing to pay Azurin and the Putative Class Members the requisite one hour of premium pay (at their regular hourly rates) for each day they are denied an off-duty meal period.

242.    Defendants' unlawful conduct harmed Azurin and the Putative Class Members by depriving them of the meal periods and penalty wages they are owed.

243.    Accordingly, Azurin and the Putative Class Members are entitled to recover compensation for Defendants' failure to authorize, permit, and/or make available meal periods, plus interest at the highest applicable rates, and attorneys' fees and costs.

**C**OUNT **IV**

**F**AILURE TO **P**ROVIDE **A**CCURATE **I**TEMIZED **W**AGE **S**TATEMENTS
**P**URSUANT TO **C**AL. **L**AB. **C**ODE § 226

244.    Azurin incorporates all other paragraphs by reference.

245.    Azurin brings his wage claim under the California Labor Code and applicable IWC Order(s) as a class action on behalf of himself and the Putative Class Members pursuant to F**ED.** R. C**IV.** P. 23.

246.    At all relevant times, Fresenius was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

247.    At all relevant times, BMA was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

248.    At all relevant times, Defendants employed Azurin and the Putative Class Members as covered "employees" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

249.    Section 226(a) of the California Labor Code requires employers, like Defendants, to provide accurate itemized wage statements to employees "semimonthly or at the time of each payment of wages" that accurately show:

> (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall

be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

250.    IWC Wage Order 5-2001(7) establishes similar wage statement requirements.

251.    Section 226(e) of the California Labor Code further provides:

An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

252.    Defendants did not provide timely, accurate itemized wage statements to Azurin and the Class Members in accordance with Section 226(a) of the California Labor Code and the applicable the IWC Wage Order(s) because the wage statements Defendants provided these employees did not accurately reflect the actual hours worked, actual gross wages earned, premium pay earned, or actual net wages earned.

253.    Defendants' unlawful conduct harmed Azurin and the Putative Class Members by depriving them of the accurate, itemized wage statements they are owed.

254.    Defendants are liable to Azurin and the Class Members for the amounts described above, plus interest at the highest applicable rates, and attorneys' fees and costs.

### COUNT V

### WAITING TIME PENALTIES
### PURSUANT TO CAL. LAB. CODE §§ 201-203

255.    Azurin incorporates all other paragraphs by reference.

256.    Azurin brings his waiting time penalties claim under the California Labor Code and applicable IWC Order(s) as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

257.    At all relevant times, Fresenius was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

258.    At all relevant times, BMA was an "employer" subject to the requirements of the California Labor Code and applicable IWC Wage Order(s).

259.    At all relevant times, Defendants employed Azurin and the Putative Class Members as "employees" within the meaning of the California Labor Code and applicable IWC Wage Order(s).

260.    Section 201 of the California Labor Code provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

261.    Section 202 of the California Labor Code provides: "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

262.    Section 203 of the California Labor Code provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

263.    Azurin and certain Putative Class Members left their employment with Defendants during the statutory period, at which time Defendants owed them unpaid wages.

264.     These earned, but unpaid, wages derive from the unpaid "straight time" wages, overtime wages, and premium penalty wages owed by Defendants.

265.     Defendants willfully refused, and continue to refuse, to pay Azurin and the Putative Class Members all wages due and owing to them, in the form of unpaid "straight time" pay, overtime pay, and premium pay, upon the end of their employment as a result of Defendants' illegal auto-deduction meal break policy and/or shift differential pay scheme.

266.     As a result of Defendants' actions, Azurin and the Putative Class Members have suffered, and continue to suffer, substantial losses, including lost earnings and interest.

267.     Defendants' failure to pay Azurin and the Putative Class Members the wages due and owing constitute a violation of CAL. LAB. CODE §§ 201-202.

268.     As a result, Defendants are jointly liable to Azurin and the Putative Class Members for all penalties owing pursuant to CAL. LAB. CODE §§ 201-203.

269.     Additionally, Section 203 of the California Labor Code provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

270.     Therefore, Azurin and the Putative Class Members are entitled to penalties pursuant to Labor Code § 203, plus interest.

### COUNT VI

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***

271.     Azurin incorporates all other paragraphs by reference.

272.     Azurin brings his UCL claim as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

273.     Defendants have engaged, and continue to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) earned wages required by California law; (2) overtime wages

required by California law; (3) meal periods and associated penalty wages; and (3) waiting time penalties.

274.    As a result of Defendants' failure to comply with California law, Defendants have also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

275.    The relevant acts by Defendants occurred within the 4 years preceding the filing of this action.

276.    Defendants have engaged in unlawful, deceptive, and unfair business practices, pursuant to CAL. BUS. & PROF. CODE § 17200, *et seq.*, including those set forth above, depriving Azurin and the Putative Class Members of minimum working condition standards and conditions under the California Labor Code and the applicable IWC Wage Orders as set forth above.

277.    Accordingly, Azurin and the Putative Class Members are entitled to restitution for their unpaid wages and overtime wages, permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct described in this Complaint, and attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and other applicable law.

<strong>JURY DEMAND</strong>

278.    Azurin demands a trial by jury.

<strong>RELIEF SOUGHT</strong>

WHEREFORE, Azurin, individually and on behalf of the Putative Class Members, seeks the following relief:

    a.  An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

b.  An Order appointing Azurin and his counsel to represent the interests of the Putative Class;

c.  An Order finding Defendants jointly liable to Azurin and the Putative Class Members for their unpaid wages, overtime wages, double time wages, liquidated damages, treble damages, statutory damages, and other penalties owed under the California Labor Code and applicable IWC Wage Order(s);

d.  A Declaratory Judgment that Defendants violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Orders;

e.  Judgment awarding Azurin and the Putative Class Members all unpaid wages, overtime wages, double time wages, liquidated damages, treble damages, statutory damages, and other penalties available under the California Labor Code, the applicable IWC Wage Order(s), and the UCL;

f.  An Order awarding attorney's fees, costs, and expenses;

g.  Pre- and post-judgment interest at the highest applicable rates; and

h.  Such other and further relief as may be necessary and appropriate.

Dated: July 12, 2023

Respectfully submitted,

**GORDON LAW GROUP LLP**

By: */s/ Philip J. Gordon*
Philip J. Gordon (Mass. BBO# 630989)
Kristen M. Hurley (Mass BBO # 658237)
585 Boylston Street
Boston, Massachusetts 02116
617-536-1800 – Telephone
617-536-1802 – Facsimile
pgordon@gordonllp.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**