UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JONATHAN AZURIN, Individually and for Other Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
|  | ) | Civil Action No. 23-CV-11585-AK |
| v. | ) ) | |
| BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC. and FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
OR, ALTERNATIVELY, TO STAY CASE**

**ANGEL KELLEY, D.J.**

Plaintiff John Azurin, on behalf of himself and other similarly situated employees, (collectively, "Azurin" or "Plaintiffs") bring this action against Defendants Bio-Medical Applications of California, Inc. ("BMA") and Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America ("Fresenius") (collectively, "Defendants"). [Dkt. 1 ("Compl.")]. Azurin seeks to recover unpaid wages and other damages from the Defendants. [Id.]. On August 30, 2023, Defendants filed their Motion to Dismiss the Class Action Complaint or, Alternatively, to Stay Case. [Dkt. 14]. For the following reasons, Defendants' Motion to Dismiss [Dkt. 14] is **DENIED** and Azurin's action may continue before this Court.

1

I.     BACKGROUND

Unless otherwise noted, the facts are presented as alleged in the Complaint. On July 14, 2023, Plaintiffs filed suit alleging that Defendants had improperly withheld wages through a meal period deduction and through their failure to incorporate shift differentials in their overtime calculations. [See Compl.]. Defendant Fresenius is a New York Corporation with its headquarters in Waltham Massachusetts; BMA is a wholly owned subsidiary of Fresenius. [Id. at ¶¶ 39, 41]. Fresenius owns a network of around 4,100 dialysis clinics, including a number in California. [Id. at ¶ 45].

Fresenius and BMA employed Azurin as a Registered Nurse (RN) in and around Bakersfield and West Covina, California. [Id. at ¶ 2]. Azurin alleges he regularly worked more than 40 hours a week. [Id. at ¶ 3]. Despite this, Defendants failed to pay him for all of those hours he worked. [Id. at ¶ 4]. Instead, the Defendants automatically deducted one hour a day from his work time for meal breaks even when he did not actually receive *bona fide* meal breaks. [Id. at ¶¶ 5, 7-8]. In addition, Defendants also required Azurin to remain on duty and perform compensable work throughout his shifts including during the supposed meal breaks he received. [Id. at ¶ 9]. While employed, Defendants failed to pay Azurin the mandatory one hour of premium pay, at his regular rate of pay, for each day that Defendants denied them an off-duty meal period. [Id. at ¶ 86].

Defendants also paid Azurin different hourly rates, or shift differentials, based on the type of shift he worked. [Id. at ¶ 14]. However, these shift differentials were not included when Azurin regular rates of pay were calculated for the purpose of overtime. [Id. at ¶ 15]. Azurin was also not provided with accurate, itemized wage statements. [Id. at ¶ 88]. Azurin alleges that a number of other employees, who make up members of a class he seeks to represent, also had

these experiences. Azurin defines the putative class of similarly situated employees as: "All hourly, non-exempt employees who worked for, or on behalf of, Fresenius through BMA in California who received (1) a meal period deduction and/or (2) shift differentials at any time during the past 4 years ("Putative Class Members")." [Id. at 38].  Azurin brings the following claims: Failure to Pay Overtime and Double Time Wages Pursuant to Cal. Lab. Code § 510 (Count I); Failure to Pay Earned Wages for all Hours Worked Pursuant to Cal. Lab. Code § 204 (Count II); Failure to Authorize, Permit, and/or Make Available Bone Fide Meal Periods Pursuant to Cal. Lab. Code §§ 226.7 and 512 (Count III); Failure to Provide Accurate Itemized Wage Statements Pursuant to Cal. Lab. Code § 226 (Count IV); Waiting Time Penalties Pursuant to Cal. Lab. Code §§ 201-203 (Count V); Violation of California's Unfair Competition Law Pursuant to Cal. Bus. & Prof. Code §§ 17200 (Count VI).  [Id. at ¶¶ 201-277].

Defendants bring their Motion to Dismiss [Dkt. 14] arguing that this case entirely overlaps with another putative class action case called Calderon v. Bio-Med. Applications of Mission Hills, Inc. DBA Fresenius Kidney Care Mission Hills, No. 22ST-CV-24391 ("Calderon case").  The Calderon case features virtually the same claims.[1]  [Dkt. 15-2 at 2].  While the named Plaintiffs in both are different, the defendants in the Calderon case include Bio-Medical Applications of Mission Hills, Inc. ("BMA Mission Hills"), who is not a party to this action, and Bio-Medical Applications of California, Inc., and Fresenius management Services, Inc. d/b/a Fresenius Medical Care North America, who are the Defendants here.[2]  [Id. at ¶ 10].  The

---

[1] The Calderon case brings claims for Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, and 1197); Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198);  Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512);  Failure to Authorize and Permit Rest Periods (Cal. Lab. Code §§ 226.7); Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203); Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226); and Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, et seq.). [Dkt. 15-2 at 2].

[2] The Calderon complaint additionally names Does 1-10 as additional defendants who are as of yet unknown.  [Dk. 15-2 at 6].

proposed class in Calderon is: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning March 21, 2019 and ending when notice to the Class is sent." [Id. at ¶ 24]. Such a class is broader than, and would envelop, the proposed class in the instant case. As such, Defendants argue that this case should be dismissed pursuant to the Colorado River doctrine, or alternatively stayed pending the resolution of the first-filed case.[3] [Dkt. 15 at 1]. The Court heard argument on this matter on February 22, 2024, and took the matter under advisement. [Dkt. 33].

## II. DISCUSSION

The Colorado River abstention doctrine "permits federal courts to decline jurisdiction in favor of parallel state litigation for reasons of 'wise judicial administration.'" Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 8 (1st Cir. 1990) (quoting Colo. River Water Conservation Dist. v. U.S., 424 U.S. 800, 818 (1976)). The First Circuit has noted that this doctrine is narrow and should be used only sparingly. "Of all the abstention doctrines, it is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal.'" Jimenez v. Rodriguez–Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (quoting Colo. River, 424 U.S. at 819).

The "presence of parallel litigation in state court will not in and of itself merit abstention in federal court." Id. "[T]here is nothing unusual about parallel litigation resolving similar controversies in both state and federal court." Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012). Twin litigation may result in some measure of inefficiency and

---

[3] Under the first-to-file rule, when two federal district courts have cases before them involving the same parties and similar subject matter, "the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996). The first-to-file rule is no longer implicated here because the Central District of California remanded the Calderon case back to California state court on September 18, 2023. [Dkt. 26 at 1].

4

wasted resources, and there is some risk of inconsistent decisions from different courts on the same or similar issues.  See Jimenez, 597 F.3d at 29; KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003).  The Supreme Court held in Colo. River "that the surrender of jurisdiction in favor of parallel state proceedings for reasons of 'wise judicial administration' is permissible only in 'exceptional' circumstances." Villa Marina, 915 F.2d at 12 (quoting Colo. River, 424 U.S. at 818).  The decision to "dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

For the reasons detailed below, this Court finds that the circumstances presented in this case are not sufficient to overcome this presumption.  In the instant case, Defendants have established parallelism between the cases, but have failed to establish the presence of extraordinary circumstances that would support a stay or dismissal under the Colorado River doctrine.  Therefore, Defendants' motion must be denied.

**1. Parallel Cases**

Before determining whether abstention is appropriate under the Colorado River doctrine, the Court must first determine whether the cases in question are parallel.  In other words, the federal and state-court cases must be similar enough that the outcome of the state action would "resolve all of the claims in the federal case." Glassie v. Doucette, 55 F.4th 58, 64 (1st Cir. 2022).  For two matters to be considered parallel, they must include "substantially the same parties and issues in the two forums." Pullman Arms Inc. v. Healey, 364 F.Supp. 3d 118, 122 (D. Mass. 2019); Ackerman v. ExxonMobil Corp., 734 F.3d 237, 249 (4th Cir. 2013) ("State and federal actions are parallel 'if substantially the same parties litigate substantially the same issues

5

in different forums.'") (quoting Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 464 (4th Cir. 2005); Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988) ("A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.") (internal quotation marks and citation omitted). Parallel cases do not require "perfect identity of issues." Villa Marina, 947 F.2d at 533; see also Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) (noting that "exact parallelism" is not required, and "[i]t is enough if the two proceedings are substantially similar").

The scope of Calderon is broader than this action, yet the outcome therein could resolve the issues in this case. Many of the same legal issues are at stake in both actions. Plaintiffs in both matters are challenging BMA and Fresenius for their failure to pay them for all hours worked; provide meal periods; pay meal period premiums for each time a meal period violation occurred; and for their failure to pay all overtime rates owed. [Compl. at ¶¶ 4, 10, 11, 14-16; Dkt. 15-2 at ¶¶ 1, 4]. The proposed class in Calderon covers a broader range of time than the proposed class in this action, as the class in Azurin seeks to represent a putative class that begins around four months later. [Dkt. 15-2 at ¶ 24, Compl. at 38; ¶ 38].[4] It also covers a broader range of issues. The Calderon case seeks additional relief for the failure to "include non-discretionary bonuses, commissions, monetary and non-monetary incentives, production pay, performance pay, and/or shift differentials in the calculation of the Class Members' regular rate of pay used to calculate the overtime rate for the payment of overtime wages." [Dkt. 15-2 at ¶ 28]. In Calderon, the plaintiff challenges the Defendants' failure to pay *all* overtime wages while here Azurin focuses on improper lunch break deductions and incorrect shift differential calculations,

---

[4] The putative class in the instant case covers employees for the four years prior to the complaint, which means the class seeks to cover employees in the period after July 12, 2019, whereas the putative class in Calderon seeks to cover employees during the period after March 21, 2019. Azurin's complaint was filed on July 12, 2019.

but those particular issues are enveloped in that broader category that the plaintiffs in Calderon challenge. [Dkt. 15-2 at ¶ 28; Compl. at ¶¶ 14-16]. Thus, the outcome in Calderon would likely cover all of the issues Azurin raises here.

Both cases involve significant factual overlap as well. Because both cases concern Defendants' conduct regarding the payment of overtime at some of the same facilities, resolving this case will involve the parties addressing many of the same operative facts, including the same witnesses, documents, and more. Taken together, this leans in favor of finding that the two cases are substantially similar and therefore parallel.

However, Azurin raised an additional wrinkle complicating that conclusion at oral argument—the Defendants in this matter are seeking to have themselves dismissed from Calderon as an improperly named party. While the putative classes are overlapping, the named plaintiffs are different in both cases. Calderon is brought against one additional Defendant: BMA Mission Hills. [Dkt. 15-2 at 2]. The Defendants in this case, BMA of California and Fresenius, are the only common party across both cases. In Calderon, the Defendants are arguing that they have been improperly named because they did not employ the plaintiff but that instead BMA Mission Hills, which is a distinct corporate entity, did.[5] This undermines the Defendants' argument before this Court that the outcome in Calderon would control here or that the parties are substantially the same. Should Defendants' motion in Calderon be successful, the scope of the class in that case would be dramatically different. It appears then that Defendants wants to have their cake and eat it too. They are arguing that in one matter they have nothing to

---

[5] Calderon v. Bio-Med. Applications of Mission Hills, Inc. DBA Fresenius Kidney Care Mission Hills, No. 22ST-CV-24391, Memorandum in Support of Defendants Bio-Medical Applications of California Inc. and Fresenius Management Services, Inc's Motion for Judgment on the Pleadings.

7

do with a pending case (Calderon) and in another (Azurin) are arguing that their role in that case (Calderon) is so central that it should preclude this Court from exercising its jurisdiction here.

Accordingly, the Court declines to determine that the cases are parallel. However, even if Defendants' efforts to get themselves dismissed in Calderon are ultimately unsuccessful, the Court would still not abstain from jurisdiction here because the Defendants fail to demonstrate that extraordinary circumstances are present which would merit the application of the Colorado River doctrine.

### 2. Extraordinary Circumstances

If the cases are indeed parallel, then the court must determine whether "some extraordinary circumstances [exist] for a federal court to shrink from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." KPS, 318 F.3d at 10 (internal quotation marks and citation omitted). Under the Colorado River doctrine, to make that determination, "courts look to a variety of factors to determine whether 'exceptional circumstances exist." Id. These factors include:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for principles underlying removal jurisdiction.

Id. The courts' analysis is not necessarily limited to those factors and no single factor is determinative. Id. Furthermore, in evaluating these factors, the court must always keep in mind "the 'heavy presumption favoring exercise of jurisdiction.'" Id. (quoting Villa Marina, 915 F.2d at 13). For the reasons detailed below, the Court finds that the circumstances presented in this case are not sufficient to overcome this presumption.

      a. <u>Geographical Inconvenience</u>

Examining the six relevant factors[6] for this case, the Court finds the second factor, geographical inconvenience, leans slightly in favor of Defendants.  The Defendants argue that the Azurin action would be inconvenient for class member witnesses, the class representative, and for the Court which would need to apply California law.  [Dkt. 15 at 12].  Here, some of the Putative Class Members and many direct supervisors live in California which could cause them to travel to Massachusetts if this Court does not abstain.  Some inconvenience is inevitable given that the parties are already spread across two states.  Defendants maintain their corporate headquarters in Waltham, Massachusetts. Therefore, if this Court does abstain in favor of <u>Calderon</u> in California, the burden to travel could fall on the Defendants.  By filing this matter in Massachusetts, Plaintiffs have indicated their willingness to work around the geographical inconvenience of being in this forum.

Since travel will likely be necessary whether or not this Court abstains, some degree of inconvenience is likely to occur for both parties making the impact of this factor more neutral. <u>See</u> <u>Big Bob's Flooring Outlet of America, Inc. v. Elyachar</u>, 566 F.Supp.3d 89, 103 (D. Mass. 2021) (deciding geographical inconvenience is neutral where parties are required to travel for litigation regardless of the court's abstention).  To minimize the inconvenience, the parties can take the option of conducting some of the litigation remotely.  The Court acknowledges that litigating remotely has its own challenges.  Some aspects of litigation, such as depositions may not be as effective with the use of video conferencing technology.  As such, the Defendants'

---

[6] Factors one and eight are not applicable and are not addressed by the parties.

concerns about the geographical inconvenience are reasonable. While this factor leans slightly in favor of Defendants, that alone is by no means determinative. See KPS, 318 F.3d at 10.

      b.   Avoiding Piecemeal Litigation

The Defendants argue that given Calderon's broader scope, allowing the Azurin action to proceed could lead to two courts reaching repetitive or inconsistent results. [Dkt. 15 at 12]. The piecemeal litigation that is "to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating Colorado River doctrine." Jimenez, 597 F.3d at 29. Accordingly, "[d]uplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." Villa Marina, 915 F.2d at 13. "Dismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." KPS, 318 F.3d at 10 (quoting Villa Marina, 915 F.2d at 16). "[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colo. River, 424 U.S. at 816; see also Nazario-Lugo, 670 F.3d at 114 (emphasizing federal court's obligation to exercise jurisdiction even though parallel litigation poses "some risk of inconsistent decisions from different courts on the same or similar issues").

Here, both cases involve similar claims for California Labor Code violations, and both are based on, in some instances, a shared set of facts. This is not enough though for the concern over piecemeal litigation to lean in favor of abstention. First, the concerns at issue here are of primary importance to the immediate parties, and there is no exceptional basis weighing in favor of giving up federal jurisdiction, "such as a clear competing policy or some special complication." Nazario-Lugo, 670 F.3d at 116; see KPS, 318 F.3d at 11 (holding that a contract dispute wherein the outcome was of primary importance only to the immediate parties did not

10

weigh in favor abstention). This contrasts, for instance, with the concern in Colo. River wherein federal law featured a clear policy counseling against allowing piecemeal adjudication of river system water rights in order to prevent further litigation. 424 U.S. at 819–20; see Rojas-Hernandez v. Puerto Rico Elec. Power Auth., 925 F.2d 492, 497 (1st Cir. 1991) ("Unlike the determination of water rights at issue in the Colorado River case, inconsistent results here would be unlikely to give rise to further litigation"). Beyond the standard concerns about inconsistent results or duplication of resources that are raised by any parallel litigation, Defendants have not demonstrated that there is "something more" here that should move the Court to favor abstention. See Jimenez, 597 F.3d at 29. Second, as discussed at oral argument [Dkt. 33], some of the concerns that Defendants raised can be addressed short of abstaining from jurisdiction, such as by coordinating discovery with the parties in Calderon to ensure the burden on witnesses, the parties, and counsel can be minimized.

Therefore, the Court does not find that this factor weighs in favor of abstention.

c. Order in Which the Forums Obtained Jurisdiction

Defendants argue that the Azurin action was filed over a year after the Calderon action was filed which makes it far more likely that Calderon will reach the discovery stage sooner. [Dkt. 27 at 5]. In addition, Defendants argue that Calderon already has "significantly more information about the class metrics (including class size, number of workweeks, and rates of pay)" than Azurin. [Id.].

The order in which jurisdiction was taken is not a "mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the Colorado River balancing is being done." Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 52 (1st Cir. 1995) (quoting Moses, 460 U.S. at 21).

11

Despite being filed over a year prior, there is no indication that Calderon is any further along the adjudication process. The parties have attended initial status conferences but no significant motion practice or progress in discovery has been made in Calderon since the case was remanded to state court. [Dkt. 15 at 12-13]. Both cases appear to be at similar stages, even though the Calderon action currently has more information about class metrics. [Dkt. 27 at 5]. Therefore, this Court finds this factor to be neutral.

    d.   State or Federal Law

Defendants argue that the fifth factor favors abstention because California state law will control the outcome of this case. Although state law does apply to the claims in this diversity action, "this factor does not tilt the balance in favor of abstention." Spark Energy Gas, LP v. Toxikon Corp., 864 F. Supp. 2d 210, 220 (D. Mass. 2012). This factor favors abstention in those rare instances "where the state-law issues 'present particularly novel, unusual or difficult questions of legal interpretation' that are best left to state court resolution." Id. (quoting Elmendorf, 48 F.3d at 52). This is not the case here. No novel or difficult state law issues appear to be implicated in the claims or defenses thus far raised in the instant matter. Therefore, this Court finds that the fifth factor does not weigh in favor of abstention.

    e.   The Adequacy of the State Forum

The Defendants argue that the Superior Court in California can adequately adjudicate the claims of this case. The adequacy of the state forum operates against the surrender of jurisdiction only where the state forum may not be adequate to adjudicate the claims. Burns v. Watler, 931 F.2d 140, 147 (1st Cir. 1991) (citing Rojas-Hernandez, 925 F.2d at 496). Here, the California forum is adequate to protect the parties' interests as this is an action brought under California law. However, that conclusion alone is not sufficient to tip the balance in Defendants'

favor.  U.S. v. Fairway Cap. Corp., 483 F.3d 34, 44 (1st Cir. 2007) ("the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action.") (quoting Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986)).  Accordingly, the Court finds that this factor is neutral.[7]

    f.  Vexatiousness

Defendants argue that this action is vexatious because Azurin's counsel has filed other pending wage and hour class/collective actions against Defendants, including as to meal and rest period violations of federal law and labor law of other states.  [Dkt. 27 at 7].  Vexatious litigation refers to the vexatious or reactive nature of the federal lawsuit.  In other words, it looks at the plaintiffs' motivation behind bringing the federal case.  Villa Marina, 915 F.2d at 15.  The first concept under this factor, reactiveness, refers to when "one party files a federal action in reaction to an adverse ruling in state court."  Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F. Supp. 2d 217, 222 (D. Mass. 1999).  The second concept, or vexatiousness, "ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts."  Id.

There is no indication that the actions of Azurin here rises to the level of vexatiousness that would be necessary to warrant abstention.  The lawsuit cannot be considered reactive because Plaintiffs have not filed this federal action in reaction to an adverse ruling in state court.  Azurin's counsel may have filed similar suits (under different but similar, statutes) against the Defendants in other states and within this district, but unlike his counsel, Azurin himself is not

---

[7] As previously mentioned, the Defendants motion to dismiss BMA/Fresenius as a party to the Calderon case is pending before the Superior Court of the State of California. If the court therein decides to dismiss the Defendants, then Plaintiffs will have no recourse for recovery of their claims under either action. If this occurs, this factor will lean against Defendants.

involved in those matters. Each of those seek to represent separate classes in different states and are based on the violations of the labor laws of different states. [Dkt. 26 at 12]. As such, Defendants have not shown that the litigation here is vexatious or reactive.

### III.    CONCLUSION

After balancing all of the relevant factors, Defendants have failed to show any extraordinary circumstances to support a dismissal of Azurin's action here. For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 14] is **DENIED**.

SO ORDERED.

Dated: March 25, 2024                                          /s/ Angel Kelley
                                                               Hon. Angel Kelley
                                                               United States District Judge